YAGGY *et al.* v. THE DISTRICT TOWNSHIP OF MONROE.

1. **Schools**: TEACHING OF PHYSIOLOGY AND HYGIENE: PURCHASE OF MAPS AND CHARTS. Chapter 1, Laws of 1886, enjoining upon the public schools the duty of teaching physiology and hygiene with special reference to the effects of alcoholic drinks, stimulants and narcotics upon the human system, under pain of losing their share of the public-school fund, does not contemplate that school districts shall incur a debt, in violation of section 1729 of the Code, in purchasing maps and charts for facilitating the teaching of such subjects.

2. ———: CONTINGENT FUND: WHEN "UNAPPROPRIATED": PURCHASE OF MAPS AND CHARTS. So much of the contingent fund of a school district as is necessary to be expended to keep the schools in operation is by law appropriated to that purpose, regardless of the fact whether or not orders have been drawn on the fund; and although there is cash on hand in that fund in excess of orders drawn upon it, but not in excess of the demands of the school upon that fund for the fiscal year, there is no part of such fund "unappropriated," within the meaning of section 1729 of the Code, authorizing the expenditure of any "unappropriated contingent fund" for the purchase of maps, charts, etc.

3. ———: PURCHASE OF MAPS, ETC., ON CREDIT: PRESUMPTION AS TO CONTINGENT FUND. Where a school district purchased maps and charts on credit, the presumption arises that there was no "unappropriated contingent fund" in the treasury at the time of the purchase, and that the district contracted a debt therefor, contrary to section 1729 of the Code; and the vendor of such maps and charts, before he can recover the price thereof, must overcome such presumption. (*Bellmeyer v. Ind. Dist. of Marshalltown*, 44 Iowa, 564, *distinguished*.)

4. ———: CONTINGENT FUND: WHEN NOT IN TREASURY. Money in the hands of the county treasurer to the credit of the school district is not in the district treasury within the meaning of section 1729 of the Code.

5. ———: ———: ORDERS ON: PRECEDENCE. Where there was an order upon the contingent fund of a school district for fuel, and a later one for maps and charts, and still a later one for the salaries of the secretary and treasurer, *held* that the last order was for proper and necessary contingent expenses, and took precedence of the order for maps and charts, which the law (Code, sec. 1729) allows to be purchased only with "unappropriated contingent fund."

*Appeal from Mahaska District Court.*—HON. DAVID
RYAN, Judge.

FILED, MAY 16, 1890.

THE defendant district, by its board of directors,
made to the plaintiff the following order, of the date
indicated thereby:

"STATE OF IOWA, OSKALOOSA, Sept. 20, 1886.
"*The Treasurer of District Township of Monroe, in
Mahaska County:*
"Pay to Yaggy, West & Boucher or order the sum
of two hundred and forty-five dollars on March 1, 1887,
from the contingent fund, for eight revised anatomical
studies. By order of the board of directors.
                     "WM. H. MOORE, President.
"M. S. HADLEY, Secretary."

The order is unpaid, and this action is to recover
the amount thereof, with interest. The defense pleaded
is that, at the time the order was made, there was no
unappropriated contingent fund in the treasury of the
district to pay for the studies; that the effect of the pur-
chase was to create a debt in violation of the statute;
and that, as a consequence, the order is void. The cause
was tried to the court without a jury, and the following
facts and conclusions of law were found: "Finding of
facts: *First.* That on the twentieth day of September,
1886, the defendant, the district township of Monroe,
issued to the plaintiff the order sued on, which was for
maps and charts contracted for, which said order was
duly issued by order of the board of directors of said
district. *Second.* That on September 20, 1886, there
was in the treasury of the said district the sum of two
hundred and thirty-five dollars of the contingent fund.
*Third.* On said twentieth day of September, 1886,
there was appropriated of said fund in the following
order: For coal, winter's fuel, one hundred and forty-
four dollars; for maps and charts sued on, two hundred

and forty-five dollars; for secretary and treasurer's salary, thirty dollars. I find, as conclusions of law: That the plaintiff is entitled to receive on the order sued on the sum of ninety dollars, to draw interest at six per cent. from the date of said order, to-wit, September 20, 1886, till March 23, 1889, to-wit, one hundred and three and fifty-four-hundredths dollars. I further find that the orders drawn upon said contingent fund are entitled to priority in the order in which they were appropriated." To these findings and conclusions both parties excepted, and both parties appeal.

*Geo. W. Lafferty* and *G. C. Morgan,* for plaintiffs.

*James A. Rice,* for defendant.

GRANGER, J.—I. By chapter 1, Acts Twenty-first General Assembly, it is provided: " Sec. 1. That

1. SCHOOLS: teaching of physiology and hygiene: purchase of maps and charts.

physiology and hygiene, which must in each division of the subject thereof include special reference to the effects of alcoholic drinks, stimulants and narcotics upon the human system, shall be included in the branches of study now and hereafter required to be regularly taught to, and studied by, all pupils in the common schools. * * * Sec. 2. It shall be the duty of all boards of directors of schools and of boards of trustees, and of county superintendents in the case of normal institutes, to see to the observance of this statute, and make provision therefor; and it is especially enjoined on the county superintendent of each county that he include in his report to the superintendent of public instruction the manner and extent to which the requirements of section 1 of this act are complied with in the schools and institutes under his charge, and the secretary of school boards in cities and towns is especially charged with the duty of reporting to the superintendent of public instruction as to the observance of said section 1 hereof in their respective town and city

schools, and only such schools and educational insti-
tutions reporting compliance as above required shall
receive the proportion of school funds or allowance of
public money to which they would be otherwise enti-
tled." The "studies" referred to in the order were
designed for compliance with these provisions of the
law. By section 1729 of the Code, it is provided that
the board of directors "may use any unappropriated
contingent fund in the treasury to purchase records,
dictionaries, maps, charts and apparatus for the use of
the schools in their districts, but shall contract no debt
for this purpose."

It is not questioned in argument but that the
"studies" for which the order was given come within
the articles enumerated in section 1729, they being
really maps or charts ; but it is urged that the section
has no application to the act in question ; that, as we
understand, the act necessarily excludes its operation,
because, if allowed to operate, it would defeat the pur-
poses of the act. We do not think the position main-
tainable. The act in question became operative July 4,
1886, and the purchase was made September 20, 1886.
The argument then proceeds upon the theory that the
law is mandatory as to making provisions for these
studies, and, as between the taking effect of the law
and the purchase there was no opportunity for raising
funds for such purchase, the limitations of the section
could not have been intended. Without committing
ourselves to a definite view of the law as to what the
board could or should do in making the necessary
"provision therefor" under the act, we think the con-
struction claimed is rather forced than natural, when
all the provisions of the law are considered. To the
end that the act shall be observed, it is true that an
official supervision is created, with a means of official
information as to compliance by the different boards,
and a public forfeiture is provided as a penalty for non-
compliance. But the duty of making "provisions
therefor" is only enjoined under the law, and the

intention must have been that the board should make the provisions only as they were able to do under existing laws. The law intended future action in making the provisions, and, of course, such action as was legal. To our minds, the act did not require an expenditure of money until, under existing law, the money could be procured; and no forfeiture of allowance could legally result from a failure to make earlier provision. Section 1729 provides for the purchase of such articles as were purchased by the board, and, if their procurement was intended by the act, the legislature knew of the limitations of the section, and would, we must believe, have provided for their exemption, if it so intended, otherwise than by a doubtful implication; and, again, there is nothing in the law making a purchase of these or like maps an absolute essential to a compliance with it. The branches may be studied and taught without such maps, although, perhaps, much better with them. They are not a necessity, in the eye of the law.

II. It will conduce to brevity in this opinion if we here consider an assignment of error by the defendant, as, with our view, it practically disposes of the case on appeal. As we hold that the limitation of section 1729 applies to purchases of this character,—that is, that such purchases must be from an unappropriated contingent fund in the treasury,—it becomes quite important to know what constitutes an "unappropriated fund," within the meaning of the section. The district court evidently regarded the act of the board in making purchases or orders for payments as the appropriation intended, as will be seen by its findings of fact numbers 2 and 3. To our minds such a conclusion does not meet the true spirit and purpose of the law. By taking the statute bearing on this subject "by the four corners," and looking at it to see and know its real design, the task does not seem to be difficult. Much of the difficulty of interpretation lies in attaching a technical definition to the word "appropriation," and

2. ——: contingent fund: when "unappropriated:" purchase of maps and charts.

really overlooking the purpose of the law. By having in mind one express provision of the section, we will be aided much to reach a conclusion. The section in substance says that no debt shall be contracted for the purpose of purchasing such articles. Now, if the board, for the purpose of purchasing the articles, contracts a debt, it violates the law. In addition to this, and in harmony with the thought, the purchase must be from the contingent fund in the treasury. It must be a cash purchase. The money must be on hand for that purpose. The money on hand must be unappropriated for other purposes.

We now reach the question if the act of the board in making orders or payments is the appropriation intended. Section 1747 provides that the treasurer shall hold all moneys belonging to the district, and pay them out on the order of the president, countersigned by the secretary. Section 1748 provides for three distinct funds, with each of which a separate account is to be kept, namely, teachers', school-house, and contingent. The contingent fund is designed for rent, fuel, repairs and all other contingent expenses necessary for keeping the school in operation. The law is mandatory that the board shall provide a place for the school, a teacher, fuel, and other matters necessary to keep the school in operation. It may then aid the operations of the school by the purchase of maps, etc., as provided in section 1729. Now, suppose a district has in its contingent fund, or available thereto, for a fiscal period, two hundred dollars, and that this amount is necessary to procure fuel and pay other necessary expenses to keep the school in operation. If it applies it for that purpose, it certainly cannot buy maps or charts during that period, for it has not the unappropriated money in the treasury, and it must not contract a debt for that purpose. But can it do this—appropriate the money on hand for the maps and charts—and go in debt for the fuel and other necessary expenses for keeping the school in operation?

Yaggy v. The Dist. Twp. of Monroe.

Would not that, to all intents and purposes, be contracting a debt for the purpose of buying the maps and charts? We think so, and that it would be a plain violation of the spirit of the law. Our conclusion is that the law appropriates the contingent fund on hand or available to the necessary expenses of keeping the school in operation, so far as it is necessary for that purpose, and that it is illegal for the board to divert it from that purpose to buy the articles specified in section 1729.

If it be said, how can such purchases be made? the answer will be, it is the duty of the board, when it contemplates such a purchase, to estimate the expenses of keeping the school in operation for the fiscal period; and if the money in the treasury, or available thereto, during such period, is in excess of such requirements, the excess would be unappropriated; for the design of the law is to keep the school in operation, and for that purpose appropriates only what is necessary. Such unappropriated money may be used by the board for discretionary purposes, of which the purchase of maps is one, and provision may be made for such excess.

Both parties on appeal assigned error by the court as to its findings of fact, urging that they are not sustained by the evidence. With our view, it is not necessary to decide these questions. Before there can be a valid judgment on the order, it must appear that at its issuance it had the support, at least to some extent, of an unappropriated fund for its payment; otherwise it was wholly a purchase upon credit, and void. The order upon its face shows that it was issued September 20, 1886, and made payable March 1, 1887; from which we infer it was a credit transaction, or that there was not money at the time of the issuance for its payment. The findings of fact specify an amount of contingent fund on hand, but they do not show the amount necessary to keep the school in operation. There were some specific appropriations, but it does not appear that more

3. ——: purchase of maps, etc., on credit: presumption as to contingent fund.

would not be necessary ; that is, there is no such show-
ing that we can assume such fact as a matter of law.
With the inference to be drawn from the order, the
burden would be with the defendant to show that it had
support in the condition of the contingent fund when
issued, and in this respect the case differs from that of
*Bellmeyer v. Ind. Dist. of Marshalltown*, 44 Iowa, 564.
In that case the abstract furnished no facts from which
an inference could be drawn as to the fund, and the
court presumed that the board did its duty, and only
made the purchase from unappropriated funds.

There is some contention in the record and arguments
over money in the hands of the county treasurer to be
drawn, and as to whether such money is
"in the treasury," within the meaning of
section 1729. We think the law means in
the treasury of the district. As we have
said, the law contemplates cash on hand for payment,
and the board can only use it for payment if in the
hands of its treasurer.

4. ——: contin-
gent fund :
when not in
treasury.

The foregoing views quite clearly indicate our answer
to the query whether it was error to hold that the
claim of plaintiffs took precedence of the
allowance of thirty dollars for salaries to
the secretary and treasurer. We think such
salaries are a part of the necessary expenses of keeping
the schools in operation, and to which the money should
be first applied. The officers to perform the duties
required by the law are necessary to keep the schools in
operation, and without their aid the schools would stop,
taxes could not be levied, school houses built, nor
teachers employed. To the extent that the law allows
them compensation they are no more required to wait
for payment, that maps may be bought, than are those
who furnish fuel or make repairs. In this respect the
court was in error. It does not appear from the record
that it was the purpose of the defendant district to
retain the charts, but, on the contrary, it was willing to
return them. With these views, it is not necessary

5. ——: ——:
orders on :
precedence.

to consider other questions discussed, which discussion resulted from a different view as to what constitutes an appropriation of funds. It follows that the judgment is REVERSED AS TO DEFENDANT'S APPEAL; AFFIRMED AS TO PLAINTIFF'S APPEAL.